UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FRANCISCO PONCE, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:01-CV-778 RM |
| ) | |
| THOMAS G. SNIDER, *et al.*, ) | |
| ) | |
| Defendants ) | |

## OPINION AND ORDER

Franciso Ponce, a prisoner confined at the Westville Correctional Facility, submitted a complaint under 42 U.S.C. § 1983, alleging that Elkhart County, The Elkhart County Sheriff's Department, Sheriff Thomas Snider, Dr. James A. Ranochak, M.D., and Sheriff's Department employees Joe Doe, Richard Roe, Robert Moe, and John Cho violated his federally protected rights. His complaint also asserts supplemental state law claims. The court dismissed Robert Moe pursuant to 28 U.S.C. § 1915A(b)(1). Dr. Ranochak and the other defendants have filed separate summary judgment pursuant to FED. R. CIV. P. 56; Mr. Ponce has responded. For the reasons that follow, the court grants the defendants' summary judgment motions.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions,

>answers to interrogatories, and admissions on file. <u>Celotex Corp.</u>, 477 U.S. at 324.
>
>   . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Ranochakio Corp.</u>, 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

<u>McGinn v. Burlington Northern R.R. Co.</u>, 102 F.3d 295, 298 (7th Cir. 1996).

Mr. Ponce alleges that Officer Doe arrested him on October 24, 2000 without any cause using excessive and unnecessary force. He alleges that defendants Cho and Roe denied him adequate medical attention while he was in jail. Asserting claims against unknown defendants is generally disfavored. <u>Kennington v. Carter</u>, 216 F.Supp. 856, 857 (S.D.Ind. 2002). In its screening order, the court advised Mr. Ponce that he "will need to identify these defendants through discovery, move the court to amend his complaint to name them, and provide the materials necessary to serve them with process." (Memorandum and Order dated April 11, 2002). Mr. Ponce never identified these defendants, so they are entitled to dismissal. Because the statute of limitations has now run, <u>Snoderly v. R.U.F.F. Drug Enforcement Task Force</u>, 239 F.3d 892, 894 (7th Cir. 2001) (2-year statute of limitations "is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983"), the court will dismiss these defendants with prejudice.

Mr. Ponce also sues Elkhart County Sheriff's Department. Under Indiana law, a "sheriff's department" has no separate corporate existence and is therefore not a suable entity. <u>Slay v. Marion County Sheriff's Dept.</u>, 603 N.E.2d 877, 887 (Ind Ct. App. 1992); <u>Jones v. Bowman</u>, 694 F.Supp. 538, 544 (N.D. Ind. 1988) ("A city's police department is merely a vehicle through with the government fulfills

its policy functions and is not a proper party defendant. The court can find no reason why the same conclusion would not apply to a county sheriff's department."); Gillespie v. City of Indianapolis, 13 F.Supp.2d 811, 816 (S.D. Ind. 1998).

Elkhart County moves for summary judgment, asserting that Mr. Ponce has presented no evidence that the county had authority to affect his arrest or medical treatment. Under Indiana law, a county jail is under the supervision of the county sheriff, the responsibility of administering and operating the jail is placed solely on the sheriff, and the sheriff is responsible for the care of the prisoners confined there. IND. CODE § 36-2-13-5(a)(7); Weatherholt v. Spencer County, 639 N.E.2d 354, 356-57 (Ind. App. 1994). "It is well settled that Indiana Sheriffs are not subject to the control or authority of the County Commissioners of the county in which they hold office." Hupp v. Hill, 576 N.E.2d 1320, 1226 (Ind. Ct. App. 1991). Moreover , Elkhart County had no control over Officer Doe's actions in arresting Mr. Ponce:

> The county commissioners, and accordingly, the county does not have any control over the acts of the sheriff. The sheriff is an office created by Article 6, § 2 of the Indiana Constitution and the powers and duties of the office are established by the legislature. *See e.g.,* Ind. Code Ann. § 36-2-13-5 (Burns Supp. 1986). Although the county commissioners have limited emergency powers relating to the appointment of extra deputies, those powers do not relate to the ability to control the acts performed by an deputy or, indeed, by the sheriff. *See* Ind. Code Ann. § 36-8-10-6(b) (Burns 1981). Hence, an agency relationship does not exist between the county and its commissioners and the sheriff.

Delk v. Board of Commissioners of Delaware Co., 503 N.E.2d 436,440 (Ind Ct. App. 1987).

Sheriff Snider is entitled to summary judgment in his personal and official capacities for actions occurring during Mr. Ponce's arrest. Section 1983 creates

3

a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. Zimmerman v. Tribble, 226 F.3d 568 (7th Cir. 2000); Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993).

An official capacity damage claim against a municipal official "is not a suit against the official as an individual; the real party in interest is the entity." Wilson v. Civil Town of Clayton, Indiana, 839 F.2d 375, 382 (7th Cir. 1988). Municipalities cannot be held liable for damages under § 1983 unless a governmental policy or custom caused the alleged violation of the plaintiff's rights. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). A plaintiff may prevail by proving the existence of an express municipal policy that caused the alleged violation of his rights, Baxter v. Vigo County School Corp., 26 F.3d 728, 734 (7th Cir. 1994); by establishing that the person who committed the constitutional tort was an official with policy-making authority, City of St. Louis v. Parprotenik, 485 U.S. 112, 123 (1988); or by establishing the existence of a practice or custom so widespread or persistent that it rises to the level of a policy that can fairly be attributed to the municipality. Jett v. Dallas Independent School District, 491 U.S. 701 (1989).

Officer Doe was not an official with policy-making authority. So to prevail in an official capacity damage claim against the sheriff, Mr. Ponce must prove the existence of an express municipal policy or establish the existence of a widespread or persistent practice or custom. To establish a widespread practice or custom of

4

excessive use of force, Mr. Ponce must establish that Sheriff Snider "knew that the police were using objectively unreasonable force in apprehending suspects, yet did nothing to solve the problem." Dye v. Wargo, 253 F.3d 296, 299 (7th Cir. 2001). "'Considerably more proof than [a] single incident will be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the unconstitutional deprivation.'" Id. at 299, quoting Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985). This record conntains no evidence that Sheriff Snider promulgated an express formal policy or that he condoned excessive use of force or arrests without probable cause. Because the defendants met their initial obligation under FED. R. CIV. P. 56, the burden fell upon Mr. Ponce to come forth with evidence sufficient, if viewed as fully in his favor as reasonable, would allow a factfinder to decide the case in his favor. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). He has not met that burden because his response does not provide admissible evidence of the existence of an express policy or a custom authorizing excessive use of force or arrests without probable cause.

     Mr. Ponce says in his complaint that he saw a doctor after his arrest and was given enough pain medication for two weeks. When the pain medication ran out, he says a jail captain would not allow him to be given more medication or be taken back to see the doctor "because the policy of Elkhart County Sheriff Thomas G. Snider, was that if an inmate had no money on his books he could not get medical care." (Complaint ¶27). He alleges that when he told Dr. Ranochak that a police officer injured him, the doctor became angry, accused him of lying, and ordered him to leave the office. A nurse took Mr. Ponce back into the office, but Dr. Ranochak refused to see or treat him, stating "didn't I tell you to get . . . out of my office." (Complaint at ¶ 31).

5

Mr. Ponce was a pre-trial detainee at the jail. The Eighth Amendment's prescription against cruel and unusual punishments applies only to persons convicted of crimes; the rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). But "there is little practical difference between the standards utilized under the two amendments." Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001), citing Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Because deliberate indifference is comparable to criminal recklessness, Farmer v. Brennan, 511 U.S. at 837, a plaintiff must demonstrate more than an inadvertent failure to provide medical care or negligence in treating a medical condition. Estelle v. Gamble, 429 U.S. at 105-107; Billman v. Indiana Department of Correction, 56 F.3d 785 (7th Cir. 1995). He must show "something approaching a total unconcern for [his] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992), citing McGill v. Duckworth, 944 F.2d 344 (7th Cir. 1991). The defendant must have known of and disregarded an "excessive risk" to the inmate's health or

safety. Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994), *quoting* Farmer v. Brennan, 511 U.S. at 837-838.

Sheriff Snider submits the affidavits of Undersheriff Julie Dijkstra and Nurse Rebeca Hess, and portions of Mr. Ponce's medical records. Dr. Ranochak submits his own affidavit, Mr. Ponce's medical records from the Elkhart County Jail, and the affidavits of Nurses Rebecca Hess, Cynthia Lambright, and Florence Makousky. Mr. Ponce responds to the defendants' submissions with his own affidavit.

The defendants' submissions establish that Mr. Ponce had a shoulder injury when he arrived at the jail on October 24, 2000, and that Nurse Connie Bolinger referred him to the Goshen General Hospital for evaluation and treatment. The hospital staff dressed Mr. Ponce's shoulder, prescribed a sling and ibuprofen for pain, and scheduled him to be returned to the hospital in November. The next day, at the jail, Nurse Makousky cleansed the open wound on his shoulder and applied ointment. According to the complaint, the same day, "a nurse at the Elkhart County Jail gave the plaintiff enough pain pills to last two weeks." (Complaint ¶ 26).

On October 26, Dr. Ranochak and Nurse Makousky saw Mr. Ponce for pain to his right shoulder. According to Dr. Ranochak and Nurse Makousky's affidavits, Dr. Ranochak deferred treatment of Mr. Ponce's shoulder injury to Dr. David Kornokiewicz, the orthopaedic surgeon at the Goshen General Hospital who was treating Mr. Ponce's shoulder, but approved the use of quantities of tylenol in excess of that normally allowed for inmates.

On November 7, Dr. Kornonkiewicz examined Mr. Ponce and noted "AC separation — no need for surgery, usually 4 - 6 weeks until normal. Sling 2-3 weeks [full] ROM strengthening [exercise]." In her affidavit, Nurse Lambright states

7

that "I observed Ponce . . . demonstrating full range of motion with his right shoulder and engage in 'horseplay' with his roommates. By horseplay I mean Ponce was shadow-boxing with three or four inmates. On my night shift, I regularly monitored Ponce and never saw Ponce wear his sling." (Lambert affidavit at p. 2). She "observed Ponce engage in horseplay on a regular daily basis and never observed Ponce wearing a sling." (Lambert affidavit at p. 3). Mr. Ponce's jail medical records contain notes dated November 19 and December 4, 2000, reflecting that he was noncomplaint, that did not wear his sling, and that he engaged in horseplay and other activities using a full range of motion without evident pain.

According to Dr. Ranocak's affidavit, he saw Mr. Ponce again on December 7, and:

> observed that Ponce had a full range of motion in his right shoulder without deformity or crepitus and that an open wound was present at the top of his right shoulder. When asked where and when he received the wound, Ponce refused to answer. I noted no infection in the wound and directed that the wound be cleaned with soap and water. Other than the abrasion (wound) Ponce's right shoulder was found to be normal.

(Ranochak affidavit at p. 3).

Dr. Ranochak and Nurse Makousky state that Dr. Ranochak didn't refuse to treat Mr. Ponce and didn't tell him to leave the medical room. Mr. Ponce's affidavit reiterates his claim that during the December 7 meeting, Dr. Ranohcak "became angry, yelled at me to get the fuck out of his office, and then kicked me out of his office without treating me." (Ponce affidavit at p. 2). Because Mr. Ponce states under oath that Dr. Ranochak became angry and told him to get out of his office without treating him, the court must accept his version of this meeting for

8

the purposes of this memorandum. But even affording Mr. Ponce the benefit of this inference, Dr. Ranochak is entitled to summary judgment.

A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997). The evidence presented by the parties supports an inference that the injury Mr. Ponce suffered when he resisted arrest on October 24. 2000, was a serious medical need. The evidence also establishes that Mr. Ponce was seen and treated for this injury and was given pain medication. The parties' submissions establish that by the time Dr. Ranochak saw Mr. Ponce on December 7, his injury was largely healed. Mr. Ponce states in his complaint that an unidentified doctor later told him it was too late to restore his shoulder because it hadn't been treated in a timely fashion, but this is a hearsay statement and Mr. Ponce submits no admissible evidence supporting this proposition. Moreover, the record before the court establishes that Dr. Kornonkiewicz examined Mr. Ponce a month before he alleges Dr. Ranochak threw him out of his office, and Dr. Kornonkiewicz noted that the injury was healing and that there was no need for surgery to restore his shoulder. Accordingly, even if Dr. Ranochak refused to examine and treat Mr. Ponce on December 7, he was not deliberately indifferent to a serious medical need.

In his complaint, Mr. Ponce alleges that a senior jail official told him that Sheriff Snider had a policy that if an inmate had no money on his books he could

not get medical care. If so, that policy might state an official capacity claim aginst Sheriff Snider. But even if Mr. Ponce reiterated this claim in his affidavit — which he did not — it would be based on a hearsay statement. Mr. Ponce has submitted no evidence of such a policy or custom, and the affidavits and the defendants' submissions establish that Mr. Ponce was seen and treated for his injuries.

In his complaint, Mr. Ponce asserted supplemental state law claims based on the facts that supported his federal law claims. Under 28 U.S.C. § 1367, federal courts, unless otherwise provided by statute, "have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." Under Indiana's tort claims act, IND. CODE § 34-13-3-1 *et seq.*, a person may sue a political subdivision or its officials after putting the subdivision on notice of the claim by filing written notice of the claim, giving the subdivision an opportunity to investigate the claim. IND. CODE § 34-13-3-8 provides that a notice may be filed "within one hundred eighty (180) days after the loss occurs."

Compliance with the Indiana Tort Claims Act's notice provisions is a procedural prerequisite that a plaintiff must prove and which the trial court must determine before trial. Lake County Juvenile Court v. Swanson, 671 N.E.2d 429, 437 (Ind.Ct.App. 1996). "Thus, compliance with the ITCA is not a question of fact for the jury but rather a legal determination to be made by the court." *Id.* at 437, *citing* McGill v. Indiana Department of Correction, 636 N.E.2d 199, 204 (Ind.Ct.App. 1994).

The incidents that form the basis for this complaint occurred between October 24, 2000 and March 12, 2001. The defendants assert that Mr. Ponce

10

never filed an official notice of tort claim, and Mr. Ponce does not dispute these facts. Accordingly, the court will grant the defendants' request for summary judgment on Mr. Ponce's supplemental state law claims.

For the foregoing reasons, the court GRANTS defendants Thomas Snider, Elkhart County, the Elkhart County Sheriff's Department, Joe Doe Richard Roe, and John Cho's motion for summary judgment (docket #66), GRANTS defendant Ranochak's motion for summary judgment (docket #81), DISMISSES defendants Joe Doe, Richard Roe, and John Cho, and DIRECTS the clerk to enter judgment in favor of the defendants and against the plaintiff.

SO ORDERED.

ENTERED: May 31, 2005

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court